FILED
SUPERIOR COURT
OF GUAM

2024 MAY -7 PM 4: 26

CLERK OF COURT

BY: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| LISA MARIE BORJA-ATALIG, <br><br> Plaintiff, <br><br> vs. <br><br> KIRBY VERSARIO, <br> JOHN DOE INSURANCE CARRIERS NO. 1-5, <br> and DOES 6-15 <br><br> Defendant. | Civil Case No. CV0692-22 <br><br> **DECISION AND ORDER RE: MOTION FOR DEFAULT JUDGMENT** |

## INTRODUCTION

This matter came before the Honorable John C. Terlaje on February 26, 2024, for an evidentiary hearing regarding a Verified Complaint for Damages made by Lisa Marie Borja-Atalig ("Plaintiff"). Attorney Vanessa Williams ("Williams") appeared on behalf of Plaintiff. Defendants Kirby Versario ("Vesario"), John Doe Insurance Carriers No. 1-5, and Does No. 6-15 did not appear, and neither did any counsel on their behalf.

## STIPULATED FACTS

1. Plaintiff testified that on or about December 18, 2021, Plaintiff and Versario allegedly entered into a contract for the construction and installation of a home extension for Plaintiff by Versario (the "Contract"). Since Versario had already installed the two prefab container units for Plaintiff constituting her then current residence, they agreed that Versaio would construct and install the extension.

2. Plaintiff testified that the agreement included $29,500 as a fee plus an estimate for cost of materials which was $49,500 but was then increased to $59,500 (the "Contract Price"). The Contract Price was informally recorded in documents.

3. Plaintiff testified that the parties allegedly agreed that the construction work under the Contract shall be completed by January 17, 2021, which was later promised by January 22, 2021.

4. Plaintiff testified that the scope of the work included constructing a kitchen, living room, outside bathroom, septic tank, and storage shed. Some of these came in prefab units that had to be installed and connected to the existing home of Plaintiff in a secure, attractive, and waterproof manner. The plans, specifications and instructions that came with the units became part of their agreement. The parties agreed orally as to specific materials such as tiles and other discretionary materials. In sum, according to Plaintiff, the contract was, partly in writing, partly oral and can be implied partly by conduct. This is due to the informality of the arrangement and the fact that Versario did not adhere to the customs and practices for documenting projects as well as those required by law.

5. Plaintiff testified that, at the outset, Versario demanded a deposit of $10,000. Allegedly, he also demanded $2,000 for a blueprint that would be needed for recording purposes.

6. Plaintiff testified that a litany of workers appeared at the construction site demanding money. The plaintiff explained to them that she pays Versario, and he pays the subcontractors. The workers complained that Versario was not paying them.

In sum, according to Plaintiff, Versario kept demanding more money or he would not work.

7. Plaintiff testified that the construction work was not prosecuted to conclusion. On many days, allegedly, no workers appeared. On others, no work was done until 2:00 or 3:00 P.M. Plaintiff is informed, believes and thereupon alleges that one subcontractor used the residence for housing for himself and his family. By the time Plaintiff terminated the contract, the work had been abandoned by Versario.

8. Plaintiff testified that the quality of the work attempted by Versario was substandard, defective, unsafe, in violation of building codes and beneath the standard of care exhibited by building contractors in Guam including home improvement contractors.

9. Plaintiff testified that, at the time, Plaintiff terminated the contract there were no doors or front walk, the front side of the extension was wide open, the electric wiring was defective, the tile work was cracking and lacked grout, the bathroom was incomplete in many respects, the bathroom door was inoperable, the gate had been paid for but was not completed, the floor was wavy and defective, the walls had numerous defects and have to be ripped out. Versario had nailed through the butler tiles on the roof creating numerous leaks. They were all ruined and damage had resulted. Several items of personal property belonging to Plaintiff have been damaged by Versario, his workers and the defective work.

10. Plaintiff testified that Versario was notified of each and every problem and was asked to repair them and to complete the work. He allegedly refused. Accordingly, Plaintiff terminated the contract on or about February 2021.

11. Plaintiff testified that, on or about January 29, 2021, the lease for alternate living space arranged for by the Plaintiff expired and she moved her family back into the construction site.

12. Plaintiff testified that the work was supposed to have been completed by Versario, but it was not. The work site was allegedly left full of debris that was dangerous to the children and Plaintiff One of Plaintiff s children cut their foot on a jagged piece of tile. Additionally, the quiet enjoyment of Plaintiff and her children was compromised due to the condition in which Versario left the residence.

13. On December 16, 2022, Plaintiff filed a Verified Complaint for Damages and a Demand for Jury Trial with six causes of action: (1) Breach of Contract Against Defendants, (2) Negligence by Defendants, (3) Rescission and Restitution Against Versario and Does 6-15, (4) Unjust Enrichment, (5) Fraud and Deceit by Versario, and (6) Direct Action (Negligence) Against John Doe Insurance Carriers No. 1-5. Verified Compl. for Damages; Demand for Jury Trial (December 16, 2022).

14. On April 20, 2023, Plaintiff filed a Motion for Default Judgment. Mot. for Default J. (April 20, 2023). Defendant did not file an answer or an opposition. At a status hearing on February 5, 2024, the Court asked Plaintiff to present more evidence of damages for default. CV0692-22, *Lisa Marie Borja-Atalig v. Kirby Versario, John Doe Insurance Carriers No. 1-5, and Does 6-15* (minutes of hearing on February 5, 2024).

**DISCUSSION**

"Default and default judgment are distinct and must be treated separately." *Adams v. Duenas,* 1998 Guam 15 ¶ 2. Under Guam law, GRCP Rule 55 requires "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 129 (2d Cir. 2011).

**A. The Court Entered Default Against Defendant**

The Court must enter default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and that failure is shown by an affidavit or otherwise." GRCP Rule 55(a). To plead or defend, "[a] defendant shall serve an answer within 20 days after the service of the summons and complaint upon that defendant." GRCP Rule 12(a). "It is well settled that when a default judgment is entered without proper service, such default is void." *Pineda v. Pineda,* 2005 Guam 10 ¶ 10.

Defendant was properly served with a Summons, Complaint for Damages, Demand for Jury Trial on February 6th, 2023. Decl. in Support of Request for Entry of Default Against Kirby Versario (February 6, 2023). More than twenty days later, on March 2nd, 2023, Plaintiff filed a Request for Entry of Default. Pl's Request for Entry of Default (March 2, 2023). On March 8, 2023, the Clerk of Court entered default against Defendant, finding that Defendant failed to plea or otherwise respond to Plaintiff's Complaint. Entry of Default Against Def. Kirby Versario (March 8, 2023).

**B. The Court Is Prepared to Enter a Default Judgment**

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (Federal Rule 54 referred to in the district case is codified in Guam as "GRCP Rule 54"). After default is entered, a party must request for the Court to enter default judgment if the amount owed is not for a "sum certain." GRCP Rule 55(b)(2). Forty four days later, on April 20, 2023, Plaintiff filed a Motion for Default Judgment. Mot. For Default J. (April 20, 2023). As of this Order, Defendants have failed to answer or defend in this matter. Thus, the Court is prepared to enter a Default Judgment against Defendant.

**C. Although Defendant Admitted Liability by Failing to Respond, Plaintiff Must Still Prove Damages to Recover**

The Supreme Court of Guam had held that "as a general rule, when a party fails to file an answer and a default judgment is entered, only the factual allegations of the complaint as to liability are deemed admitted and not the allegations relating to damages." *Mariano v. Surla*, 2010 Guam 2 ¶ 39. A plaintiff is still required, "to prove all damages sought in a complaint." *Id.* Guam Rule of Civil Procedure 8(d) also supports this: "[a]verments in a pleading to which a responsive pleading is required, *other than those as to the amount of damage*, are admitted when not denied in the responsive pleading." GRCP Rule 8(d) (emphasis added). Thus, by failing to respond upon default, Defendant has admitted their liability in this matter, but the Plaintiff must still prove damages, if they wish to recover monetarily.

During the course of this matter, the Court has requested evidence of damages on several different occasions. *See* CV0692-22, *Lisa Marie Borja-Atalig v. Kirby Versario, John Doe Insurance Carriers No. 1-5, and Does 6-15* (minutes of hearing on October 30, 2023), (minutes for hearing on February 5, 2024), and (minutes of hearing on February 26, 2024). Despite multiple requests, the Court continues to find the evidence presented by Plaintiff to be insufficient. Plaintiff requests several different types of damages as recovery: (1) compensatory damages, (2) consequential damages, and (3) punitive damages.

### 1. Compensatory Damages

In Guam, "for the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided in Titles 13, 14, 18, 19, 20 and 21 of this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." 20 G.C.A. § 2201. Generally, a "plaintiff may recover compensatory damages only for those injuries caused by the event made the basis of the suit and must be anchored to a rational basis on which to ensure that the award is not merely speculative." C.J.S. Damages §23. Further, "compensatory damages are the measure of a loss" and "should be precisely commensurate with the injury – nothing more, nor less." *Id.*

Plaintiff claims that she paid Defendant $56,980.00. Decl. of Lisa Marie Borja-Atalig (February 23, 2024). In her complaint, Plaintiff claims compensatory damages from "the breaches of Versario in that the cost to complete plus the amount paid minus the value of the work performed leaves a balance due to Plaintiff in an amount exceeding $75,000, according to proof at trial." Verified Compl. for Damages; Demand for Jury Trial (December 16, 2022). "As

a direct and proximate result of the negligence of [the Defendant]," Plaintiff also claims, "economic and emotional distress damages." *Id.* at ¶ 6. The economic damages allegedly exceed $75,000. *Id.* Finally, Plaintiff claims damages from Defendant's Unjust Enrichment, as well as the Defendant's Fraud and Deceit. *Id.* at ¶ 7, 8. The fraud damages allegedly arise from Defendant lying to Plaintiff "that he was licensed and hiding his lack of any contractor's license or business license." *Id.* at ¶ 9.

### a. Plaintiff Did Not Provide Sufficient Evidence of Compensatory Damages Regarding Breach of Contract and Unjust Enrichment

Plaintiff provided "correct and true copies of [Plaintiff and Defendant's] initial agreement and [Defendant's] notes about the costs," as well as a "true copy of a breakdown of expenses paid to [Defendant]," but did not demonstrate that the Defendant actually received the payment. Decl. of Lisa Marie Borja-Atalig (February 23, 2024). In fact, the Court still does not know if Plaintiff paid Defendant by check or in cash. The Court would think that there should be some sort of receipt given that Plaintiff claims that she paid $56,980.00. Decl. of Lisa Marie Borja-Atalig (February 23, 2024). Without some sort of documentation, damages cannot be "anchored to a rational basis on which to ensure that the award is not merely speculative." 25 C.J.S. Damages §23.

Further, Plaintiff claims she "sought the opinion of another contractor, Mr. Victor Ungacta." Decl. of Lisa Marie Borja-Atalig ¶ 3 (February 23, 2024). She says that "he mentioned that there were a lot of mistakes, and [her] home would have to be fixed." *Id.* She claims she would have to pay more expenses and "start all over again." *Id* at ¶ 4. For the Court to anchor any damages to a rational basis, we would need to have heard from Mr. Ungacta

himself or at least a signed declaration. Further, we would need an expert to backup Ungacta's assertions.

### b. Plaintiff Did Not Provide Sufficient Evidence of Compensatory Damages Regarding Negligence or Fraud

Regarding the negligence claim, Plaintiff provided "true and correct copies of photographs depicting [conditions created by Defendant's allegedly faulty construction]," but did not provide before-photos, or evidence that the conditions were a direct and proximate result of the Defendant's negligence. Decl. of Lisa Marie Borja-Atalig with Photos (March 19, 2024). Compensatory damages need not be immediate, but they need to be so near to the cause that only they may be reasonably traced to the event." C.J.S. Damages §25. Further, "the Plaintiff bears the burden of proving by a preponderance of the evidence that its damages were proximately caused by the defendant's wrongful conduct." *Id.*

Plaintiff also claims emotional distress damages, which include "suffering, emotional distress, trauma, loss of sleep, loss of appetite, anxiety, and distress." Decl. of Lisa Marie Borja-Atalig ¶ 3 (February 23, 2024). Plaintiff claims she witnessed the suffering of her children, including her ill son. "Plaintiff lost sleep, lost weight, suffered anxiety and nervousness and was consumed with anxiety and fear for the well-being of her children." *Id.* Plaintiff is not claiming Negligent Intentional Infliction of Emotional Distress, but general Negligence, and Plaintiff cites no law in her favor. Verified Compl. for Damages; Demand for Jury Trial ¶ 9 (December 16, 2022). In general, "plaintiffs claiming emotional distress bear the burden of demonstrating the need for compensatory damages beyond nominal damages." C.J.S. Damages §292.

Regarding negligence, "unless the defendant has assumed a duty to the plaintiff in which the emotional condition of the plaintiff is an object, recovery of emotional distress damages for negligence is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty, and even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." CA JUR NEGLIGENCE § 86. This Court infers that the "breach of some other duty" in this case would be the breach of contract. Generally, "there can be no recovery for mental or emotional distress suffered as a result of breach of contract unaccompanied by physical injury." MTLLL § 31.2 (citing *Rubin v. Matthews Intern. Corp.* 503 A.2d 694 (Me. 1986) and Restatement (Second) of Contracts §353). In a similar case, plaintiffs sought emotional distress damages for the negligence breach of a contract to construct a house and the Court held that "recovery for emotional distress in such cases will be excluded unless the breach of the contract caused bodily harm, or the breach is of such a kind that serious emotional disturbance was a particularly likely result." *See Erlich v. Menezes*, 21 Cal. 4th 543, 87 Cal. Rptr. 2d 886, 981 P.2d 978 (1999) (citing Restatement (Second) of Contracts § 353). Therefore, the damages in this case hang on the existence of a physical injury. The only such injury claimed by Plaintiff is that a cracked tile cut her son "and the bleeding wouldn't stop since the cut was deep." Decl. of Lisa Marie Borja-Atalig ¶ 3 (February 23, 2024). Plaintiff, testified to this but has not provided documentation of her son's medical expenses or the extent of the injury. The Court would need to see evidence of these damages.

Finally, Plaintiff claims compensatory damages from fraud and deceit. "A party who willfully deceives another with intent to induce the other to alter his or her position to his or her injury or risk is liable for any damage that person suffers as a result of the deceit." CAJUR FRAUD § 114. The Court assumes that the damages suffered from the fraud and deceit would stem from the damage caused by the breach of contract or negligence. Thus, the Court requires that the damages above be proven, to also prove damages from the fraud and deceit.

## 2. Plaintiff Did Not Provide Sufficient Evidence of Consequential Damages

Plaintiff claims consequential damages from the "breach of contract including medical care for her son, lodging, storage, etc." Verified Compl. for Damages; Demand for Jury Trial ¶ 5 (December 16, 2022). "Special, or consequential damages, in breach of contract actions are extraordinary in that they do not directly flow from the breach and are recoverable only upon a showing that they were foreseeable and within the contemplation of parties at the time the contract was made." *Speirs v. BlueFire Ethanol Fuels, Inc.* 243 Cal.App.4th 969 (2015). Plaintiff has not established foreseeability or sufficiently established compensatory damages above, so consequential damages cannot be established either.

Plaintiff also claims consequential damages from their negligence claim regarding "expenses for alternative shelter, medical care for her son, storage charges, and other consequential damages according to proof at trial." Verified Compl. for Damages; Demand for Jury Trial ¶ 6 (December 16, 2022). Consequential damages stem from contract claims, not negligence, however. *See Leris Jorge Construction Management, Inc. v. Pomona Unified School Dist.* 34 Cal.4th 960 (2004) (Contractual damages are of two types – general damages (sometimes called directed damages) and special damages (sometimes called consequential

damages). Therefore, regarding Plaintiff's negligence claim, consequential damages don't apply.

Finally, Plaintiff asserts that they incurred consequential damages from their recission and restitution claim. Verified Compl. for Damages; Demand for Jury Trial ¶ 6, 7 (December 16, 2022). "A claim for damages is not inconsistent with a claim for relief based on rescission. The rescinding party is entitled to complete relief, including not only restitution of benefits conferred under the contract, but also any consequential damages." CCPREALPROP §1:49. Plaintiff has not sufficiently proven the compensatory damages above, however, so consequential damages cannot be established either.

### 3. Plaintiff Did Not Provide Sufficient Evidence of Punitive Damages

Plaintiff claims that Defendant "acted with malice, oppression, fraud and disregard for the known legal rights of Plaintiff in doing or omitting to do the things alleged in this cause of action. Accordingly, Plaintiff is entitled to punitive damages pursuant to proof at trial." Verified Compl. for Damages; Demand for Jury Trial ¶ 9 (December 16, 2022). Guam Courts have held that, "in general, actual or compensatory damages are required for an award of punitive damages." *See May D.F. HANNAH, Plaintiff-Appellee/Cross-Appellant, v. Lucille Flores Leon GUERRERO, Ignacio R. Leon Guerrero, Alfred F. Leon Guerrero, Mark D. Leon Guerrero, Brian F. Leon Guerrero and Does I-IX, Defendants-Appellants/Cross-Appellees*, 2020 WL 4938408 (Guam Terr. 2020) (citing *Contento v. Mitchell*, 104 Cal. Rptr. 591, 592 (Ct. App. 1972); *Contractor's Safety Ass'n v. Cal. Comp. Ins. Co.*, 307 P.2d 626, 629 (Cal. 1957)). Thus, the Court cannot award punitive damages until compensatory damages have been proven. As explained above, compensatory damages in this case require more evidence.

## CONCLUSION

The Court is prepared to enter a default judgment, but in order to carry the judgement into effect, "it is necessary to take an account or to determine the amount of damages." GRCP Rule 55(b)(2). In order to prove damages, however, Plaintiff must provide a bank statement or a receipt of transaction demonstrating that the Defendant was indeed paid. Further, Plaintiff should demonstrate more evidence regarding the prior state of the property, the likely expenses involved in finishing the project, and the medical injuries incurred, as described above.

Accordingly, the Court **ORDERS** Plaintiff to provide more evidence, particularly that Defendant received payment for his services, **within 30 days** or the Court will enter a Default Judgment against Defendant without recovery.

**SO ORDERED**, this 7th day of May, 2024.

HON. JOHN C. TERLAJE
Judge, Superior Court of Guam